CULLEN AND DYKMAN, LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 357-3700
Matthew G. Roseman, Esq. (MR 1387)
Bonnie L. Pollack, Esq. (BP 3711)

Attorneys for New York Community Bank

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In Re:                                                          Chapter 11
                                                                Case No. 10-51846 (JF)

Ihab Hussam Tartir,

                        Debtor.
------------------------------------------------------------X

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on April 7, 2011 at 10:00 a.m., New York Community Bank ("NYCB"), by and through its attorneys Cullen and Dykman LLP, will move (the "Motion") before the Honorable Jerome Feller, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Eastern District of New York, located at 271 Cadman Plaza East, Brooklyn, New York, or as soon thereafter as counsel can be heard, for an Order (a) converting the above-captioned case to chapter 7 or, alternatively, (b) granting relief from automatic stay or, alternatively (c) prohibiting the Debtor's use of cash collateral.

PLEASE TAKE FURTHER NOTICE that any responses or objections to the Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court electronically in accordance with the Revised General Order (and Exhibit 1 to the Revised General Order, which can be found http://www.nyeb.uscourts.gov, the official website of the Bankruptcy Court), by

registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect or any other Windows-based word processing format (with a hard copy delivered directly to Chambers) and shall be served in accordance with the Revised General Order upon (i) Cullen and Dykman LLP, 100 Quentin Roosevelt Blvd, Garden City, New York 11530, attention: Bonnie L. Pollack, Esq. and (ii) the Office of the United States Trustee, 271 Cadman Plaza East, Suite 4529, Brooklyn, New York 11201, in order that they be received no later than March 31, 2011 at 4:00 p.m.

Dated: Garden City, New York
      March 8, 2011

                          CULLEN AND DYKMAN LLP

                By:    s/Bonnie L. Pollack
                        Matthew G. Roseman (MR1387)
                        Bonnie L. Pollack (BP 3711)
                        100 Quentin Roosevelt Boulevard
                        Garden City, New York 11530
                        (516) 357-3700

                        Attorneys for New York Community Bank

CULLEN AND DYKMAN LLP
Attorneys for New York Community Bank
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
(516) 357-3700
Matthew G. Roseman, Esq. (MR 1387)
Bonnie L. Pollack, Esq. (BP 3711)

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In Re:                                               Chapter 11
                                                     Case No. 10-51846 (JF)
Ihab Hussam Tartir,

                          Debtor.
------------------------------------------------------------X

## MOTION TO CONVERT CASE TO ONE UNDER CHAPTER 7 OF THE BANKRUPTCY CODE OR, ALTERNATIVELY, GRANTING RELIEF FROM THE AUTOMATIC STAY OR, ALTERNATIVELY PROHIBITING DEBTOR'S USE OF CASH COLLATERAL

TO THE HONORABLE JEROME FELLER, UNITED STATES BANKRUPTCY JUDGE:

New York Community Bank ("NYCB"), by and through its counsel Cullen and Dykman LLP, as and for its motion to convert the above-captioned chapter 11 case to one under chapter 7 of the Bankruptcy Code or, alternatively, granting relief from the automatic stay or, alternatively, prohibiting the Debtor's use of cash collateral, respectfully represents as follows:

### INTRODUCTION

1.  On December 21, 2010 (the "Petition Date"), Ihab Hussam Tartir (the "Debtor") filed a voluntary petition for relief under chapter 11, title 11, United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Eastern District of New York.

2. No trustee or examiner has been appointed in the Debtor's case and the Debtor remains in possession of his property and in operation of his business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

**BACKGROUND**

3. On May 6, 2004, the Debtor executed and delivered to NYCB a Promissory Note in the original principal amount of $375,000 together with interest thereon (the "Tartir Note"). A copy of the Tartir Note is annexed hereto as Exhibit "A".

4. On May 6, 2004, the Debtor executed and delivered to NYCB a mortgage securing the indebtedness under the Tartir Note (the "Tartir Mortgage"), against Debtor's property located at 76 Nevins Street, Brooklyn, New York (the "Nevins Property"). A copy of the Tartir Mortgage is annexed hereto as Exhibit "B". The Tartir Mortgage was recorded in the Register's Office of Kings County on July 3, 2004, bearing City Register File Number 2004000376672.

5. On that same date, the Debtor executed and delivered to NYCB an Assignment of Rents and Leases in connection with the Nevins Property, a copy of which is annexed hereto as Exhibit "C".

6. On August 29, 2007, St. Clair Realty LLC ("St. Clair"), an entity claimed to be wholly owned by the Debtor, executed and delivered to NYCB a promissory note in the original principal amount of $4,000,000 together with interest thereon (the "St. Clair Note"). A copy of the St. Clair Note is annexed hereto as Exhibit "D".

7. On August 29, 2007, St. Clair and the Debtor each executed and delivered to NYCB a Mortgage securing the amounts due and owing under the St. Clair Note (the "St. Clair Mortgage"), against the property located 292/294 Atlantic Avenue, Brooklyn, New York (the

"Atlantic Avenue Property"). A copy of the St. Clair Mortgage is annexed hereto as Exhibit "E". Pursuant to the third rider to the St. Clair Mortgage, the Debtor and St. Clair agreed to a cross default/cross collateralization by and between the Tartir Note and Mortgage and the St. Clair Note and Mortgage, as a result of which the Nevins Property also secures the St. Clair Note. The St. Clair Mortgage was recorded in the Register's Office of Kings County on September 21, 2007 as City Register File Number 2007000486957.

8.     Also on August 29, 2007 St. Clair executed and delivered to NYCB a Security Agreement whereby St. Clair granted to NYCB a security interest in and to the collateral set forth therein to secure payment of the St. Clair Note. A copy of the Security Agreement is annexed hereto as Exhibit "F". On that same date, St. Clair executed and delivered to NYCB an Assignment of Rents and Leases in connection with the Atlantic Avenue Property, a copy of which is annexed hereto as Exhibit "G".

9.     St. Clair is in default under the terms of the St. Clair Note and Mortgage by failing to make the monthly payments required thereunder since February 1, 2009. As a result of St. Clair's default under the St. Clair Note and Mortgage, the Debtor is in default under the terms of the Tartir Note and Mortgage as well.

10.    By virtue of the foregoing defaults, on or about July 24, 2009, NYCB commenced an action to foreclose the St. Clair Mortgage.[1] A Forbearance Agreement was entered into between the parties on or about September 22, 2009. However, the Debtor and St. Clair defaulted under the terms of the Forbearance Stipulation. The foreclosure action was thereafter stayed as a result of the Debtor's bankruptcy filing.

11.    As of the Petition Date, NYCB is owed $353,817.02 from the Debtor on the Tartir Note and Mortgage, and $4,624,072.91 upon the St. Clair Note and Mortgage (collectively, the

---

[1] The action did not seek to foreclose the Tartir Mortgage.

"NYCB Debt"). The monthly payments due to NYCB from the Debtor upon the Tartir Note and Mortgage, including principal, interest and escrow, amount to $2,610.00. The monthly payments due to NYCB upon the St. Clair Note and Mortgage amount to $26,575.00.

12. In the Debtor's schedules, he asserts ownership of the Nevins Property as well as the Atlantic Avenue Property (which the Debtor states was "bought under the name 'St. Clair Realty LLC'"). NYCB does not believe that the Atlantic Avenue Property is, in fact, owned by the Debtor.

13. Additionally, in his schedules, the Debtor lists the secured claim of NYCB against Nevins Property as a first mortgage in the amount $320,000 and a second mortgage in the amount of $4,000,000 and also lists the claim of NYCB against the Atlantic Avenue Property in the amount of $4,000,000.

14. In actuality, pursuant to the various loan documents described here, the Debtor owes NYCB $353,817.02 secured by the Nevins Property; the Nevins Property also secures the $4,623,944.91 debt owed by St. Clair to NYCB; and the Atlantic Avenue Property is not part of the Debtor's estate at all, but NYCB has a $4,624,072.91 lien against that property.

15. The Debtor's schedules shows his monthly income amounts to $32,752 while his monthly expenses amount to $41,310, leaving a deficit of $8,558 per month. Those amounts include monthly payments on the Tartir Mortgage and on the St. Clair Mortgage.[2]

16. As set forth above, by virtue of the Assignments of Rents and Leases in favor of NYCB (See, Exhibits "C" and "G" annexed hereto), NYCB has a security interest in, among other things, the rents generated from the Nevins Property and the Atlantic Avenue Property (the "Rents"). The Rents constitute NYCB's "cash collateral" within the meaning of section 363(a)

---

[2] The Debtor's schedules show monthly payments on the St. Clair Mortgage of $26,000. In actuality, the amount is $26,575.

4

of the Bankruptcy Code. Pursuant to section 363(c)(2) of the Bankruptcy Code, the Debtor "may not use, sell, or lease cash collateral under [section 363] unless each entity that has an interest in such cash collateral consents, or the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of [section 363]." See, 11 U.S.C. §363(c)(2).

17. "The debtor's complete respect for secured property rights is commanded by the Bankruptcy Code. Section 363(c) requires either creditor consent or prior court approval to use cash collateral, and in the well-managed chapter 11 case the 'motion to use cash collateral' is the very first pleading to be filed by the highly-leveraged debtor." In re Alvey, 56 B.R. 170, 172-3 (Bankr. W.D. Ky. 1985).

18. Although the Debtor's case has been pending for more than two (2) months, a review of the docket of the Debtor's case demonstrates that the Debtor never sought Court approval to use NYCB's cash collateral. Moreover, the Debtor neither sought nor obtained NYCB's consent for such use. Annexed hereto as Exhibit "H" are copies of letters sent to Debtor's counsel respecting the Debtor's unauthorized use of cash collateral, to which the Debtor never responded. The Debtor is, therefore, in violation of section 363(c)(2) of the Bankruptcy Code.

19. For the reasons set forth below, NYCB believes that the case should be converted to one under chapter 7 of the Bankruptcy Code or, alternatively the automatic stay should be vacated or, alternatively, the Debtor should be prohibited from using NYCB's cash collateral.

## **THE DEBTOR'S CASE SHOULD BE CONVERTED**

20. Pursuant to section 1112(b) of the Bankruptcy Code, on a request of a party in interest, the Court shall convert a case to one under chapter 7 or dismiss the case, whichever is in the best interest of creditors, if the movant establishes "cause". Pursuant to section 1112(b)(4) of

the Bankruptcy Code, cause includes, but is not limited to "unauthorized use of cash collateral substantially harmful to 1 or more creditors". See, 11 U.S.C. § 1112(b)(4)(D). In deciding a motion to convert, the Court is not limited to the grounds enumerated in section 1112(b); the list therein is not exhaustive. See, e.g. In re Squires Motel, LLC, 416 B.R. 45, 49 (Bankr. N.D.N.Y. 2009); In re Éclair Bakery, 255 B.R. 121, 137 (Bankr. S.D.N.Y. 2000); In re Tornheim, 181 B.R. 161, 163 (Bankr. S.D.N.Y. 1995), app. dism. 1996 U.S. Dist. LEXIS 1952 (S.D.N.Y. 1996); In re HBA East, Inc., 87 B.R. 248, 258 (Bankr. E.D.N.Y. 1988). Here, grounds exist for converting the Debtor's case for "cause".

21. First, as set forth above, the Debtor has knowingly continued to use cash collateral without Court authorization or consent of NYCB. Use of such cash collateral has been substantially harmful to NYCB. NYCB's cash collateral is being utilized for unknown expenditures and should not be tolerated. "The failure of such a debtor to seek cash collateral authorization (or obtain the necessary consents) when applicable, reveals a profound ignorance by that debtor of the responsibilities attendant to its status. In appropriate cases, such a failure should be considered in conjunction with the viability of a Chapter 11 case or the continuation of the debtor in possession." In re Three Partners, Inc., 199 B.R. 230, 237, n. 9 (Bankr. D. Mass. 1995). Here, the Debtor's failures weigh against his continued viability as a chapter 11 debtor, requiring conversion of his case.

22. Moreover, there are numerous questions raised by the Debtor's filing that would better be addressed by a trustee. As set forth above, the Debtor claims property owned by another entity, and the debts associated with that Property, as his own, when it is not the Debtor's property, thereby invoking a stay as to that property improperly. Additionally, as set forth in a claim filed by Ziad Ksouri ("Ksouri") against the Debtor, a copy of which is annexed hereto as

6

Exhibit "I", Ksouri claims a 50% ownership interest in St. Clair despite the fact that the Debtor professes to be the sole owner of St. Clair. Furthermore, the Debtor knowingly failed to schedule Ksouri's claims, even as disputed, on his bankruptcy petition. Given this, it is unclear as to what other claims and property is improperly listed, or omitted, from the schedules.

23. That the Debtor has a propensity for dishonesty is evidenced by the fact that the Debtor, a suspended immigration attorney, was sentenced to two (2) years in prison for conspiring to defraud the U.S. Department of Homeland Security by helping persons obtain permanent "green cards" through sham marriages. A copy of the press release with respect to his sentence is annexed hereto as Exhibit "J".

24. Given the Debtor's propensity for dishonesty, combined with the questions raised by the Debtor's schedules and the Debtor's unauthorized use of cash collateral, NYCB believes that cause exist to convert the case to chapter 7 and appoint a trustee to investigate the Debtor's assets and liabilities both pre- and post-petition (as well as avoidable transfers) and work all such matters out in a cohesive manner to generate a return for creditors in this case.

## NYCB IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY

25. If the Court is not inclined to convert the Debtor's case, the automatic stay must nevertheless be vacated to permit NYCB to continue with the foreclosure action against the Atlantic Avenue Property and to commence an action with respect to the Nevins Property. Section 362 of the Bankruptcy Code provides for a broad stay of acts to collect debts against the debtor or to affect property of the estate. Sections 362(d)(1) and (d)(2), however, require the Court to grant relief from the stay in certain circumstances, both of which are present here. First, under section 362(d)(1) of the Bankruptcy Code, relief from the stay should be granted upon a showing of "cause" for such relief. "Cause" is not defined in the Bankruptcy Code but is

7

determined on a case by case basis. Pursiful v. Eakin, 814 F.2d 1501, 1506 (10th Cir. 1987); In re South Oakes Furniture, Inc., 167 B.R. 307, 308 (Bankr. M.D. Ga. 1994); In re M.J. & K Co., Inc., 161 B.R. 586, 590 (Bankr. S.D.N.Y. 1993). In determining whether to modify the stay, the court must "'consider the particular circumstances of the case and ascertain what is just to the claimants, the debtor, and the estate.'" M.J. & K, 161 B.R. at 590, quoting In re Mego Int'l, Inc., 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983). Thus, "cause" is a broad and flexible concept. M.J. & K,161 B.R. at 590.

26. Although the grant or the denial of relief from the stay is a matter traditionally viewed as being within the discretion of the Bankruptcy Court, the Court must grant relief from the stay if the collateral is not adequately protected. See In re Woodfield Furniture Clearance Center of Suffolk, Inc., 102 B.R. 327 (Bankr. E.D.N.Y. 1989); In re Diplomat Electronics Corp., 82 B.R. 688, 692 (Bankr. S.D.N.Y 1988) ("[I]f the court finds that . . . the secured creditor lacks adequate protection . . . the court must lift the stay.")

27. Here, cause exists under section 362(d)(1) of the Bankruptcy Code to vacate the automatic stay for several reasons. First, Debtor has not made any post-petition payments to NYCB. The Debtor's failure to make the post-petition payments required under the applicable Mortgages constitutes cause for relief from the automatic stay pursuant to section 362 of the Bankruptcy Code. In re Elmira Litho, 174 B.R. 892, 903 (Bankr. S.D.N.Y. 1994) (prima facie case established by demonstrating Debtor has completely failed or substantially failed, to make post-petition payments). Further, and as discussed above, the Debtor is using NYCB's cash collateral without consent or without Court Order in violation of section 363 of the Bankruptcy Code. Additionally, as to the Atlantic Avenue Property, such Property is not even owned by the Debtor although it does serve as collateral for the Tartir Note executed by the Debtor.

Accordingly, NYCB submits that cause exists under section 362(d)(1) of the Bankruptcy Code to vacate the automatic stay to permit it to continue with the foreclosure action against the Atlantic Avenue Property and to commence an action with respect to the Nevins Property.

28. In addition to the foregoing, grounds exist to grant relief from the automatic stay under section 362(d)(2) of the Bankruptcy Code. Under section 362(d)(2), the Court shall grant relief from the automatic stay of an act against property if the debtor does not have equity in the property and the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2).

29. As to the Nevins Property, the Debtor clearly lacks equity in such Property. The Debtor lists the value of that property at $850,000 in its schedules. An appraisal commissioned by NYCB valued the Nevins Property as of November 24, 2009 at $1,150,000. (See Exhibit "K")[3]. However, the Nevins Property is encumbered not only by the Tartir Mortgage but also serves as security for the St. Clair Note as well. NYCB's liens against the Nevins Property by virtue of both the Tartir Note and Mortgage and the St. Clair Note and Mortgage total $4,977,889.93. Accordingly, the Debtor lacks equity in the Nevins Property.

30. The Debtor also lacks equity in the Atlantic Avenue Property. First, it is submitted that the Debtor has no equity interest in this property at all; rather, this property is owned by St. Clair. However, even in the event that the Debtor did, the Debtor values the Atlantic Avenue Property at $3.2 million in its schedules. An appraisal of the Atlantic Avenue Property commissioned by NYCB valued the Atlantic Avenue Property at $3.4 million as of November 24, 2009. See, Exhibit "L".[4] The debt owed to NYCB under the St. Clair Note and Mortgage totals $4,624,072.91. Thus, there is no equity in the Atlantic Avenue Property either, even if the Debtor had an ownership interest in such property.

---

[3] The appraisal is voluminous and the entire appraisal is therefore not annexed, but is available upon request.
[4] The appraisal is voluminous and the entire appraisal is therefore not annexed, but is available upon request.

31. Moreover, NYCB does not believe that either of the properties is necessary for an effective reorganization. The Debtor must demonstrate that he has a <u>reasonable prospect</u> of reorganization. What is required under section 362(d)(2) "is not merely showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*. This means...that there must be 'a reasonable possibility of a successful reorganization within a reasonable time period'". <u>United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.</u>, 484 U.S. 365, 375-6 (1988) (citations omitted) (emphasis in original); <u>see also</u>, <u>In re Pegasus Agency, Inc.</u>, 101 F.3d 882, 886 (2d. Cir. 1996). "It goes without saying that an effective reorganization cannot be based solely on speculation". <u>In re Kent Terminal Corp.</u>, 166 B.R. 555, 562 (Bankr. S.D.N.Y. 1994), citing <u>In re Saypol</u>, 31 B.R. 796, 803 (Bankr. S.D.N.Y. 1983). "Mere dreams" of a reorganization cannot sustain the automatic stay. <u>In re New Era Co.</u>, 125 B.R. 725, 730 (Bankr. S.D.N.Y. 1991).

32. In <u>In the Matter of Anchorage Boat Sales, Inc.</u>, 4 B.R. 635 (Bankr. E.D.N.Y. 1980), the Court found that the debtor's property was not necessary to an effective reorganization because there was no possibility of an effective reorganization. In that case, nothing in the record indicated that the debtor was able to generate sufficient revenues to meet its obligations nor did the debtor have an outside source of funds which would enable it to finance a plan. Thus, the Court concluded that the debtor's encumbered property was not essential because there was no possibility that it could reorganize, and that the stay should be lifted to allow the lender to proceed to foreclose on its security interest. <u>Anchorage Boat Sales</u>, 4 B.R. at 641; <u>see also</u> <u>In the Matter of Boca Development Associates</u>, 21 B.R. 624, 630 (Bankr. S.D.N.Y. 1982) (among other

things, there was no proof that financing will be available for a plan. The Debtor, therefore, did not establish that an effective reorganization was likely.).

33. In this case, as in the ones cited herein, the Debtor has no reasonable prospect of reorganization. All of the Debtor's properties (to the extent even owned by him) are significantly under water. By the Debtor's own schedules, he does not have sufficient income to pay debt service, his ordinary monthly expenses and, certainly, chapter 11 expenses. Furthermore, the Debtor does not have an ability to earn additional income as an attorney, having been suspended from practice. Lastly, it does not appear that the Debtor can confirm a plan absent NYCB's consent. NYCB will have an unsecured deficiency claim of at least $3,827,889.93 above the value of the Nevins Property. Even attributing the value of the Atlantic Avenue Property to the Debtor (which he does not own), NYCB's deficiency claim would still amount to at least $427,889.93. The only other unsecured claims total $776,000 ($166,000 in unsecured debt and a $600,000 presumed deficiency claim of the Costa estate). Since the votes of claimants holding $806,606.25 would be needed to obtain an impaired accepting class (67% of total unsecured debt of $1,203,889.93), the Debtor cannot confirm a plan without NYCB's consent.

34. NYCB submits that the Debtor is therefore hard pressed to seriously argue that he is able to reorganize at all and submits that the Debtor's properties are therefore not necessary for an effective reorganization since there is no reasonable chance of reorganization to begin with.

35. Based on the foregoing, NYCB believes in addition to cause under section 362(d)(1) of the Bankruptcy Code, grounds exist under section 362(d)(2) of the Bankruptcy Code to vacate the automatic stay to permit NYCB to continue its existing foreclosure action and to commence one with respect to the Nevins Property.

## ALTERNATIVELY, THE DEBTOR SHOULD BE PROHIBITED FROM USING CASH COLLATERAL

36. If the Court is not inclined to convert the Debtor's case or vacate the automatic stay, the Court should issue an order under section 105(a) of the Bankruptcy Code prohibiting the Debtor from using NYCB's cash collateral absent NYCB's consent or order of the Court. Section 105(a) permits the Court to issue any order necessary or appropriate to carry out the provisions of the Bankruptcy Code. See, 11 U.S.C. § 105(a). Without such an order of the Court, it is clear that the Debtor will not comply with its obligations under section 363(c) on its own fruition, and that such an order is necessary to carry out the provisions of section 363(c) of the Bankruptcy Code.

## AN ACCOUNTING SHOULD BE IMMEDIATELY PROVIDED

37. Finally, the Debtor should be compelled to immediately provide an accounting of all monies received and expended since the Petition Date. Such funds constitutes NYCB's collateral and NYCB, as well as the United States Trustee and the Court, have the right to insure that the expenditures have been appropriate.

## CONCLUSION

38. Based on the foregoing, NYCB respectfully submits that cause exists to convert the Debtor's case to one under chapter 7 of the Bankruptcy Code or, alternatively, to vacate the automatic stay or, alternatively, to prohibit the Debtor's use of cash collateral. Additionally, the Debtor should be compelled to immediately account for all monies received and used by it since the Petition Date.

39. No prior request for the relief sought herein has been made to this or any other Court.

40. Pursuant to Local Bankruptcy Rule 4001-1 and E.D.N.Y. Administrative Order #553, a completed motion for relief Worksheet and Declaration is attached hereto as Exhibit "M". The worksheet, dated March 8, 2011, has been executed by Chris Beck on behalf of NYCB.

WHEREFORE, NYCB respectfully requests that the Court grant the relief sought herein, together with such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
March 8, 2011

        CULLEN AND DYKMAN LLP
        Attorneys for New York Community Bank

        By: /s/ Bonnie L. Pollack
            Matthew G. Roseman, Esq. (MR 1387)
            Bonnie L. Pollack, Esq. (BP (3711)
            100 Quentin Roosevelt Blvd.
            Garden City, New York 11530
            516-357-3700