UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

In Re:

Ihab Hussam Tartir,

                              Debtor.

------------------------------------------------------------X

Chapter 11
Case No. 10-51846 (JF)

## STIPULATION AND ORDER

This Stipulation (the "Agreement") is made this ___ day of June, 2011 by and between New York Community Bank ("NYCB") and Ihab Hussam Tartir (the "Debtor").

The following recitals are a material part of this Agreement.

A. On May 6, 2004, the Debtor executed and delivered to NYCB a Promissory Note in the original principal amount of $375,000 together with interest thereon (the "Tartir Note").

B. On May 6, 2004, the Debtor executed and delivered to NYCB a mortgage securing the indebtedness under the Tartir Note (the "Tartir Mortgage"), against the Debtor's property located 76 Nevins Street, Brooklyn, New York (the "Nevins Property"). The Tartir Mortgage was recorded in the Register's Office of Kings County on July 3, 2004, bearing City Register File Number 2004000376672.

C. On August 29, 2007, St. Clair Realty LLC ("St. Clair"), an entity in which Tartir is a member and/or the managing member, executed and delivered to NYCB a Promissory Note in the original principal amount of $4,000,000 together with interest thereon (the "St. Clair Note").

D. On August 29, 2007, St. Clair and the Debtor each executed and delivered to NYCB a mortgage securing the amounts due under the St. Clair Note (the "St. Clair

Mortgage"), against the property located at 292/294 Atlantic Avenue, Brooklyn, New York (the "**Atlantic Avenue Property**"). Pursuant to the third rider to the St. Clair Mortgage, the Debtor and St. Clair agreed to a cross-default/cross-collateralization by and between the Tartir Note and Mortgage and the St. Clair Note and Mortgage. The St. Clair Mortgage was recorded in the Register's Office of Kings County on September 21, 2007 as City Register File Number 2007000486957. The Tartir Note, Tartir Mortgage, St. Clair Note and St. Clair Mortgage are sometimes hereinafter collectively referred to as the "**Loan Documents**".

E.     St. Clair defaulted under the terms of the St. Clair Note and Mortgage by failing to make the payments required thereunder as of February 1, 2009. As a result of St. Clair's default under the St. Clair Note and Mortgage, the Debtor defaulted under the terms of the Tartir Note and Mortgage as well.

F.     On or about July 24, 2009, NYCB commenced an action to foreclose the St. Clair Mortgage (the "**Foreclosure Action**"). The Foreclosure Action was stayed as the result of the Debtor's bankruptcy filing as the Debtor is a named defendant therein.

G.     After NYCB's commencement of the Foreclosure Action, the Debtor filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (the "**Bankruptcy Court**"), bearing case number 10-51846 (JF) (the "**Tartir Bankruptcy Case**").

H.     As of the filing of the Tartir Bankruptcy Case, NYCB was owed $353,817.02 from the Debtor on the Tartir Note and Mortgage (the "**Tartir Indebtedness**") and $4,624,072.91 upon the St. Clair Note and Mortgage (the "**St. Clair Indebtedness**").

I.     In addition to NYCB's mortgage against both the Nevins Property and the Atlantic Avenue Property, NYCB also has a lien and security interest in the rents generated from

2

those Properties which, as to the Nevins Property, constituted cash collateral under the United States Bankruptcy Code. By Order entered May 24, 2011, the Bankruptcy Court authorized the Debtor's use of such cash collateral in connection with the Nevins Property and provided adequate protection to NYCB in accordance with the terms of that Order (the "**Tartir Cash Collateral Order**").

J.     The Debtor and NYCB have engaged in discussions with a view towards a global resolution of NYCB's claims against the Debtor as well as St. Clair, and have reached a resolution of those claims as memorialized herein.

NOW, THEREFORE, in consideration of the mutual agreements set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.     *Recitals; Acknowledgements.*     The Recitals set forth above are true and accurate, are a material part of this Agreement, and are hereby incorporated by reference, and the parties hereto are entitled to rely thereon. Without in any manner limiting the generality of the foregoing, the Debtor hereby acknowledges: (a) that the Debtor duly and validly signed and executed and delivered the Loan Documents on his own behalf and on behalf of St. Clair; (b) that the Nevins Mortgage and the St. Clair Mortgage are duly perfected priority liens against the respective Properties; (c) that the Debtor is in default under the Tartir Mortgage and St. Clair is in default under the St. Clair Mortgage; and (d) that, but for the automatic stay in the Bankruptcy Case, NYCB has the immediate right to continue enforcement of all remedies available to it under the Loan Documents or applicable law. The Debtor further acknowledges and confirms that the Loan Documents were and have been duly authorized, signed and delivered, and that NYCB is the holder thereof, that each of the Loan Documents is valid, binding and enforceable against the Debtor and/or St. Clair in accordance with their terms, and that each lien and security interest created in favor of the NYCB under the Loan Documents has been duly and validly created and perfected upon the respective Properties and in the rents. The Debtor, on his own behalf and on behalf of St. Clair, acknowledges the validity, extent, priority and amount of the Tartir Indebtedness and the St. Clair Indebtedness and NYCB's liens against the Nevins Property and the Atlantic Avenue Property.

2.     *No Effect on Existing Default and No Extension of Maturity.*     Other than as expressly set forth herein, neither the execution of this Agreement, the execution of any document or instrument required hereunder, nor the consummation of the transactions and

3

agreements set forth herein shall in any manner rescind or cure any existing default under any of the Loan Documents or mortgages, reinstate the loans to a current status, or extend the maturity date of the various loans.

3. *Conditions to Effectiveness of this Agreement.* This Agreement shall be effective only when: (a) this Agreement has been signed and delivered by each of the parties hereto; (b) the Debtor has delivered to NYCB fully executed copy of any and all resolutions, adopted by the members of St. Clair, approving this Agreement and the transactions contemplated hereunder; and (c) the Bankruptcy Court has "So-Ordered" this Agreement after proper application under Bankruptcy Rule 9019.

4. *Terms of Agreement.*

(a) Within 30 days of execution of this Agreement, Tartir will cause St. Clair to file a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court, as a related case to the Tartir Bankruptcy Case (the "**St. Clair Bankruptcy Case**"). St. Clair shall enter into a cash collateral agreement with NYCB on terms substantially similar to the Tartir Cash Collateral Order (the "**St. Clair Cash Collateral Order**").

(b) St. Clair shall file a motion for a sale of the Atlantic Avenue Property, subject to higher and better offer, under section 363 of the Bankruptcy Code (the "**St. Clair Sale**") which shall result in a net payment to NYCB upon the St. Clair Note and Mortgage of no less than $3,527,000 (the "**St. Clair Payoff**"). The St. Clair Sale shall occur no later than 60 days from the date of the filing of the St. Clair Bankruptcy Case. NYCB shall have the right to credit bid at the St. Clair Sale no less than the amount of $3,527,000.

(c) Within 30 days of execution of this Agreement, the Debtor shall file a Plan of Reorganization (the "**Plan**") in his bankruptcy case which provides for payment to NYCB as follows:

(i) The Debtor's pre-petition arrears in connection with the Nevins Note and Mortgage in the amount of $37,494.83 (the "**Arrears**") shall be paid in full on confirmation of the Plan. Any Excess Rents (as that term is defined in the Tartir Cash Collateral Order) held in escrow by counsel to NYCB pursuant to the terms thereof shall be applied to the Arrears.

(ii) The Debtor shall execute a new Note and Mortgage in a form acceptable to NYCB against the Nevins Property (the "**Plan Note and Mortgage**") in the amount of (x) the Tartir Indebtedness, plus (y) the difference between the St. Clair Indebtedness and the St. Clair Payoff, less (z) the Arrears. NYCB shall forebear from seeking payment of such amount of the Plan Note and Mortgage which shall exceed the sum of $716,322.19 (the "**Forbearance Amount**") as long as there is no default under the Plan or under this Agreement. The Debtor shall pay the remaining Plan Note and Mortgage amount

4

of $716,322.19 together with interest at the rate of 5.25% over a period of five (5) years from the date of confirmation of the Plan, based on a 30 year amortization schedule, with a balloon payment at the end of the 5 year term. Once the Plan Note and Mortgage is paid in full, and provided that the Debtor does not otherwise default under the Plan or under this Agreement, NYCB shall forgive and waive the Forbearance Amount.

(d)     The Debtor shall make all payments required under the Tarlir Cash Collateral Order until confirmation of the Plan, and shall make all payments under the St. Clair Cash Collateral Order until the closing of the St. Clair Sale.

5.     *Release of NYCB.*   (a) As consideration for NYCB's execution of this Agreement, the Debtor on his own behalf and on behalf of St. Clair hereby releases NYCB and its members, affiliates, shareholders, partners, predecessors, employees, officers, directors, attorneys, parent corporations, subsidiaries and agents ("**NYCB Parties**"), from any and all known and unknown claims and causes of action which Debtor may have against any of the NYCB Parties existing as of the date this Agreement is "so-ordered" by the Bankruptcy Court, arising from or related to, the Loan Documents, agreements, or understandings, or action or inaction with regard to the Nevins Property of the St. Clair Property or the loans, purported or acknowledged, with respect thereto. The Debtor on his own behalf and on behalf of St. Clair agrees and acknowledges that the matters released are not limited to matters which are known or disclosed.

The Debtor on his own behalf and on behalf of St. Clair further acknowledges that this release, among other things, applies to claims arising out of or with respect to any and all transactions relating to the Loan Documents, or any of them, based on any occurrence prior to the date hereof, including, without limitation, any breach of fiduciary duty or duty of fair dealing, breach of confidence, breach of loan commitment, undue influence, duress, economic coercion, conflict of interest, negligence, bad faith, malpractice, violation of the Racketeer Influenced and Corrupt Organizations Act, violation of any other statute, ordinance or regulation, intentional or negligent infliction of mental or emotional distress, tortuous interference with contractual relations or prospective business advantage, tortuous interference with corporate governance, breach of contract, bad practices, unfair competition, libel, slander, conspiracy or any claim for wrongfully accelerating any of the Loan Documents or attempting to foreclose on any collateral for the loans.

In connection with this release, the Debtor acknowledges that the Debtor and/or St. Clair are aware that they may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the released matter, but that it is the intention of the Debtor and St. Clair to hereby fully, finally and forever settle and release all released matters, disputes and differences, known or unknown, suspected or unsuspected, which now exist, may exist or heretofore have existed by the Debtor and St. Clair against any of the NYCB Parties.   In furtherance of that intention, the release provided herein shall be and remain in effect as a full and complete release notwithstanding the discovery of the existence of any such additional or different facts.

(b)     Reliance.   The Debtor on his own behalf and on behalf of St. Clair hereby acknowledges that the Debtor has not relied upon any representation of any kind made by NYCB in making the foregoing release.

5

(c)     Assignment of Claims. The Debtor on his behalf and on behalf of St. Clair represents and warrants to NYCB that the Debtor and/or St. Clair have not heretofore assigned or transferred, or purported to assign or to transfer, to any person or entity any matter released by such party hereunder or any portion thereof or interest therein, and the Debtor and St. Clair agree to indemnify, protect, defend and hold the parties set forth hereinabove harmless from and against any and all claims based on or arising out of any such assignment or transfer or purported assignment or transfer by such party.

(d)     No Admission of Liability. It is hereby further understood and agreed that the acceptance of delivery of this release by the parties released hereby shall not be deemed or construed as an admission of liability of any nature whatsoever arising from or related to the subject of the within release.

6.     *Acknowledgment of Indebtedness and Waiver of Defenses and Setoff Rights.* The Debtor hereby unconditionally and irrevocably acknowledges on his own behalf and on behalf of St. Clair that the Nevins Indebtedness and the St. Clair Indebtedness is currently and unconditionally due and owing in full to NYCB, without any defense or right of setoff whatsoever, and unconditionally and irrevocably waives all defenses, claims or setoffs affecting the Indebtedness which may have existed or arisen (or which are based on facts or circumstances actually or allegedly existing) prior to the date of this Agreement.

7.     *Additional Documents/Further Assurances.* The Debtor on his own behalf and on behalf of St. Clair and NYCB shall at any time, and from time to time, upon the written request of the other party, sign and deliver such further documents and do such further acts and things as may reasonably be requested to effect the purposes of this Agreement.

8.     *Authorization of Agreement.* The execution of this Agreement has been duly authorized by all necessary corporate, partnership, limited liability company or similarly required action of the Debtor and St. Clair, and the individuals and entities executing this Agreement on behalf of the Debtor and St. Clair have been duly authorized and empowered to bind the Debtor and St. Clair, by such execution.

9.     *Events of Default.* The Debtor on his own behalf and on behalf of St. Clair agree that the occurrence of any of the following events shall constitute an event of default ("Event of Default") under this Agreement, regardless of the reason or reasons for the occurrence of any such event, regardless of whether the occurrence is voluntary or involuntary, and regardless of whether the occurrence of any such event is attributable to, caused by, or results from operation of law or any judgment, order, directive, rule or regulation of any court or any governmental or non-governmental agency or entity:

(a)     Failure of St. Clair to file the St. Clair Bankruptcy Case within 30 days of execution of this Agreement;

(b)     Failure of St. Clair to conduct the St. Clair Sale within 60 days for the filing of the St. Clair Bankruptcy Case in accordance with the terms of paragraph 4(b) hereunder.

6

(c)     Failure of the Debtor to file the Plan which conforms to the terms of this Agreement within 30 days of execution of this Agreement and/or confirm such Plan within 60 days after such time that it is filed;

(d)     Failure of the Debtor to execute any documents necessary to memorialize the payments required to NYCB under the Plan, and failure of the Debtor to pay the Arrears on confirmation of the Plan;

(e)     Failure of St. Clair to execute the St. Clair Cash Collateral Order as provided in paragraph 4(a) hereof;

(f)     Failure of the Debtor and/or St. Clair to make when due any payment provided for under the Tartir Cash Collateral Order and the St. Clair Cash Collateral Order as provided in paragraph 4(d) hereof; and

(g)     Failure of the Debtor and/or St. Clair to perform when due any of its covenants, agreements or obligations to be performed under this Agreement or the Tartir and St. Clair Cash Collateral Orders.

*Remedies Upon Default.* In the event of the occurrence of the Event of Default under paragraph 9(a) hereof, this Agreement shall be terminated and become null and void, NYCB shall file and submit a proposed order vacating the automatic stay to enable it to pursue its rights and remedies with respect to both the Atlantic Avenue Property and the Nevins Property on 5 business days notice to the Debtor's counsel and the Office of the United States Trustee, together with an affidavit describing the Event of Default. If any party in interest opposes entry of such Order, the automatic stay shall continue in effect until the Court's determination of the objection, provided however that the only issues to be determined by the Court will be the existence of an Event of Default. In the event that NYCB continues with its Foreclosure Action and a petition is later filed under any chapter of the Bankruptcy Code which affects the Atlantic Avenue Property without the petitioner first receiving and obtaining NYCB's consent to such filing, the Debtor acknowledges and agrees, on his own behalf and on behalf of St. Clair, that (a) the filing of such later petition will be deemed to have been filed to frustrate and delay NYCB's foreclosure and to be in bad faith, (b) such filing shall not interfere with the Foreclosure Action and (c) the automatic stay imposed under section 362 of the Bankruptcy Code shall not be applicable to, and shall not operate as a stay of, the Foreclosure Action.

In the event of the occurrence of an Event of Default under paragraph 9(b) hereof, NYCB shall file and submit a proposed order vacating the automatic stay to enable it to pursue its rights and remedies with respect to both the Atlantic Avenue Property and the Nevins Property on 5 business days notice to the Debtor's counsel and the Office of the United States Trustee, together with an affidavit describing the Event of Default. If any party in interest opposes entry of such Order, the automatic stay shall continue in effect until the Court's determination of the objection, provided however that the only issues to be determined by the Court will be the existence of an Event of Default.

In the event of the occurrence of an Event of Default under paragraph 9(c), (d), (e), (f)

7

and (g) hereof, NYCB shall file and submit a proposed order vacating the automatic stay to enable it to pursue its rights and remedies with respect to the Nevins Property on 5 business days notice to the Debtor's counsel and the Office of the United States Trustee, together with an affidavit describing the Event of Default. If any party in interest opposes entry of such Order, the automatic stay shall continue in effect until the Court's determination of the objection, provided however that the only issues to be determined by the Court will be the existence of an Event of Default.

10.    *Time is of the Essence.*    Time is of the essence with respect to all agreements and obligations of the Debtor contained herein.

11.    *Entire Agreement; Written Modifications Only.*    This Agreement constitutes the sole and entire agreement between the parties with respect to the subject matter hereof, and there are no other covenants, promises, agreements or understandings regarding the same. This Agreement, including the provisions of this Section, may not be modified except by written amendment to this Agreement signed by all parties hereto, and the parties hereby: (a) expressly agree that it shall not be reasonable for either of them to rely on any alleged, non-written amendment to this Agreement; (b) irrevocably waive any and all right to enforce any alleged, non-written amendment to this Agreement; and (c) expressly agree that it shall be beyond the scope of authority (apparent or otherwise) for any of their respective agents to agree to any non-written modification of this Agreement.

12.    *Conditions of the NYCB's Obligations Under This Agreement.*    Each obligation of NYCB under this Agreement is subject to the continuing satisfaction of the following conditions, any of which may be waived by NYCB in its sole discretion: (i) all warranties and representations made by the Debtor under this Agreement are true and correct as of the execution of this Agreement and shall remain true and correct thereafter; and (ii) no Event of Default (not including the defaults described in the Recitals to this Agreement) shall have occurred under this Agreement. In the event that NYCB's obligations under this Agreement cease, NYCB may continue enforcement of any or all rights and remedies available to it under this Agreement.

13.    *No Third-Party Beneficiaries.*    This Agreement is solely for the benefit of the parties hereto and no persons or entities other than the undersigned shall be entitled to claim or receive any benefit by reason of this Agreement.

14.    *Due Diligence Performed; Parties Fully Informed, No Right to Rely.*    Each party to this Agreement hereby warrants, represents and agrees that it has, by itself and with the assistance of counsel (or, if without the assistance of counsel, such party having of its own volition chosen not to seek such assistance), performed all due diligence and investigation it deems necessary and/or desirable in connection with making a fully informed decision to enter into and sign this Agreement. The Debtor is relying on his own investigations and his own decision-making processes in determining to sign this Agreement, is not relying on the representations or omissions of NYCB in so doing, and fully understands the terms and provisions of this Agreement and of the documents contemplated hereby.

8

conflict of laws principles.

21. *Waiver of Jury Trial.* **THE PARTIES HERETO EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY CONTROVERSY OR CLAIM, WHETHER ARISING IN TORT OR CONTRACT, BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONJUNCTION WITH, THIS AGREEMENT OR ANY OF THE LOAN DOCUMENTS (INCLUDING THE VALIDITY, INTERPRETATION, COLLECTION OR ENFORCEMENT HEREOF OR THEREOF), OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY IN CONNECTION HEREWITH OR THEREWITH. EACH PARTY ACKNOWLEDGES AND AGREES THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY PERSON TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE NYCB'S ENTERING INTO THIS AGREEMENT AND THE NYCB WOULD NOT HAVE ENTERED INTO THIS AGREEMENT WITHOUT THIS WAIVER. THE NYCB IS HEREBY AUTHORIZED TO FILE A COPY OF THIS SECTION IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER OF JURY TRIAL.**

22. *Notices.* All notices and requests required or permitted hereunder shall be given in writing and shall be effective for all purposes if hand delivered or sent by: (a) certified or registered United States mail, postage prepaid, or (b) expedited next day prepaid delivery service, either commercial or United States Postal Service, with proof of attempted delivery. Notices provided by hand delivery shall be effective when delivered, notices by certified or registered U.S. mail shall be effective three business days after deposit by the sender into the mail, and notices by expedited next day prepaid delivery service shall be effective one business day after deposit by the sender with the delivery service. Notices shall be delivered as follows:

If to the NYCB:      Christopher B. Beck
                       Assistant Vice President
                       New York Community Bank
                       1 Jericho Plaza
                       Jericho, New York 11753

With a copy to:     Bonnie L. Pollack, Esq.
                       Cullen and Dykman LLP
                       100 Quentin Roosevelt Boulevard
                       Garden City, New York 11530

If to Debtor:      [to be filled in]

With a copy to:     Karamvir Dahiya, Esq.
                       Dahiya Law Offices, LLC

10

15.     *Severability.*   If any one or more of the provisions of this Agreement are deemed unenforceable, the remainder of this Agreement shall, at the sole option of NYCB, remain enforceable in accordance with the balance of the terms of the Agreement.

16.     *Delay Not a Waiver.*   Neither the failure nor any delay on the part of NYCB to exercise any right, power or privilege under this Agreement or under any document executed in connection herewith shall operate as a waiver of such right, power or privilege and any single or partial exercise of any such right, power or privilege shall not preclude any other or further exercise thereof.

17.     *Successors and Assigns.*   This Agreement shall be binding on each party's successors and assigns, including without limitation any trustee which may hereafter be appointed in the Bankruptcy Case.

18.     *Construction of Agreement.*   The following rules of construction are applicable for the purposes of this Agreement and all documents and instruments supplemental hereto unless the context clearly requires otherwise:

(a)     all references herein to numbered sections are references to the sections hereof;

(b)     the terms "include," "including," and similar terms shall be construed as if followed by the phrase "without being limited to";

(c)     the term "Property" and similar terms shall be construed as if followed by the phrase "or any part thereof";

(d)     the term "Indebtedness" shall be construed as if followed by the phrase "or any part thereof";

(e)     words of masculine, feminine or neutral gender shall mean and include the correlative words of the other genders, and words importing the singular number shall mean and include the plural, and vice versa; and

(f)     no inference in favor of or against any party hereto shall be drawn from the fact that such party has drafted any portion of this Agreement or any portion of any Loan Document.

19.     *Counterparts.*   This Agreement may be executed in more than one counterpart, each of which shall be deemed an original and shall be binding upon any party executing the same and all of which together shall constitute one and the same document. This Agreement shall become effective when all parties hereto have executed a counterpart hereof and the Bankruptcy Court has "So-Ordered" this Agreement. Signatures delivered by electronic mail or by facsimile shall have the same force and effect as delivery of an original signature.

20.     *Governing Law.*   This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York without giving effect to its

9

350 Broadway, Suite 412
New York, New York 10013

Dated: June 20th, 2011

**Ihab Hussam Tartir**

By: _____

**St. Clair Realty LLC**

By: _____

**New York Community Bank**

By: _____